JOYCE R. BRANDA
Acting Assistant Attorney General
United States Department of Justice
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
KATHERINE E.M. GOETTEL
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
GENEVIEVE KELLY
Trial Attorney
genevieve.m.kelly@usdoj.gov
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4705, VA Bar No. 86183

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| A & T FINANCIAL SERVICES, INC., et al., | ) ) ) Case No. 8:14-cv-00780-JLS-RNB |
| Plaintiffs, | ) ) **DEFENDANTS' NOTICE OF** |
| | ) **MOTION FOR SUMMARY** |
| v. | ) **JUDGMENT AND** |
| | ) **MEMORANDUM IN SUPPORT** |
| RON ROSENBERG, Chief, | ) **OF SUMMARY JUDGMENT** |
| Administrative Appeals Office, et al., | ) ) |
| | ) **Hearing:  2:30 pm, Feb. 27, 2015** |
| Defendants. | ) ) **Before the Honorable** |
| | ) **Josephine L. Staton** |
| | ) |

## NOTICE OF DEFENDANTS' CROSS-MOTION
## FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that on February 27, 2015, at 2:30 p.m., or as soon thereafter as the parties may be heard, Defendants will bring for hearing a motion for summary judgment.  The hearing will take place before the Honorable Josephine Staton in Courtroom 10A, 411 West Fourth Street, Santa Ana, CA 92701.

Defendants move the Court for summary pursuant to Federal Rule of Civil Procedure 56 because Plaintiffs cannot demonstrate that the agency action in question was arbitrary and capricious, an abuse of discretion, or otherwise contrary to law.  This motion is based on the memorandum of points and authorities attached hereto, all pleadings, papers and files in this action, and such oral argument as may be presented at the hearing on the motion.

This motion is also made following conference between counsel for the Plaintiffs and Defendants pursuant to L.R. 7-3, which took place on Wednesday, December 10, 2014.  During the conference, Plaintiffs' counsel confirmed that Plaintiffs oppose Defendants' motion.

1

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................... 1

STATEMENT OF THE ISSUE ..................................................................... 1

STANDARD OF REVIEW ............................................................................ 2

STATUTORY AND REGULATORY FRAMEWORK .................................. 3

BACKGROUND OF ADMINISTRATIVE PROCEEDINGS ...................... 5

    A.    A & T's I-140 Petition ................................................... 5

    B.    USCIS's Request for Additional Evidence ................................ 7

    C.    A & T Responds to the Request for Evidence and USCIS Denies A & T's Petition ............................................................ 9

    D.    The AAO Denies A & T's Administrative Appeal ................. 10

    E.    A & T Moves the AAO to Reopen and Reconsider, and the AAO Denies the Motion ..................................................... 12

ARGUMENT……………….......................................................................... 14

    A.    The AAO Properly Dismissed A & T's Appeal ....................... 14

        1.  The record does not compel a finding that A &T had a qualifying relationship with Yuanbang ............................... 15

        2.  The record does not compel a finding that A & T will employ Chen in a managerial or executive capacity .......... 19

    B.    The AAO Properly Denied A & T's Motion to Reopen or Reconsider .......................................................................... 22

CONCLUSION ............... ........................................................................... 25

i

# TABLE OF AUTHORITIES

## Federal Cases

*Balam-Chuc v. Mukasey*,
  547 F.3d 1044 (9th Cir. 2008) ..................................................................... 14

*BDCPS, Inc. v. FCC*,
  351 F.3d 1177 (D.C. Cir. 2003) ................................................................... 15

*Brazil Quality Stones, Inc. v. Chertoff*,
  531 F.3d 1063 (9th Cir. 2008) ................................................................ 2, 20

*City of Sausalito*,
  386, F.3d 1186 (9th Cir. 2006) ............................................................. 24-25

*Family, Inc. v. USCIS*,
  469 F.3d 1313 (9th Cir. 2006) ................................................................ 3, 14

*Global Fabricators, Inc. v. Holder*,
  320 F.3d App'x 576 (9th Cir. 2009) (unpublished) ..................................... 19

*Herrera v. USCIS*,
  571 F.3d 881 (9th Cir. 2009) ......................................................................... 2

*IKEA US, Inc. v. U.S. Dept. of Justice*,
  48 F.Supp. 2d 22 (D.D.C. 1999) ................................................................. 11

*Indep. Acceptance Co. v. California*,
  240 F.3d 1247 (9th Cir. 2000) ....................................................................... 2

*INS v. Abudu*,
  485 U.S. 94 (1988) ....................................................................................... 14

*Janka v. Nat. Transp. Safety Bd.*,
  925 F.2d 1147 (9th Cir. 1991) ....................................................................... 5

*Kern County Farm Bureau v. Allen*,
  450 F.3d 1072 (9th Cir. 2006) ....................................................................... 2

*Kong Hong USA Inc. v. Chertoff*,
   No. C-06-00804EDL, 2006 WL 3068876
   (N.D. Cal. Oct. 24, 2006) (unpublished) ........................................................21

*Love Korean Church v. Chertoff*,
   549 F.3d 749 (9th Cir. 2008) ........................................................................18

*Monjaraz-Munoz v. INS.*,
   327 F.3d 892 (9th Cir. 2003) ..........................................................................3

*Nat'l Ass'n of Home Builders v. Norton*,
   340 F.3d 835 (9th Cir. 2003) .......................................................................2, 3

*Pacific Coast Fed'N of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*,
   265 F.3d 1028 (9th Cir. 2001) .........................................................................3

*Q Data Consulting, Inc.v. INS*,
   293 F. Supp. 2d 25 (D.D.C. 2003) ...................................................................4

*Republic of Transkei v. INS*,
   923 F.2d 175 (D.C. Cir. 1991) .......................................................................20

*Soltane v. U.S. Dept. of Justice*,
   381 F. 3d 143 (9th Cir. 2004) ..........................................................................5

*Tsiva Inc. v. Attorney Gen.*,
   No. 3:12-CV-631-J-34PDB, 2014 WL 667607
   (M.D. Fla. Nov. 24, 2014) (unpublished) ......................................................21

*Young Sun Shin v. Mukasey*,
   547 F.3d 1019 (9th Cir. 2008) .......................................................................23

## Administrative Decisions

*Matter of Chawathe*,
   25 I. & N. Dec. 369 (AA0 2010) .....................................................................5

*Matter of Church Scientology Int'l*,
   19 I. & N. Dec. 593 (BIA 1988) ......................................................................4

*Matter of Coelho*,
    20 I. & N. Dec. 464 (BIA 1992) ................................................................. 23

*Matter of Ho*,
    19 I. & N. Dec. 582 (BIA 1988) ................................................... 5, 18, 24

*Matter of Lozada*,
    19 I. & N. Dec. 637 (BIA 1988), aff'd, 857 F.2d 10 (1st Cir. 1988) ........... 14

*Matter of Obaigbena*,
    19 I. & N. Dec. 533 (BIA 1988) ........................................................ 13, 25

*Matter of Soriano*,
    19 I. & N. Dec. 764 (BIA 1988) ........................................................ 13, 25

## Federal Statutes

5 U.S.C. §§ 551 et seq. ................................................................................... 1

5 U.S.C. § 704 ............................................................................................... 2

5 U.S.C. § 706 ............................................................................................. 25

5 U.S.C. § 706(2)(A) .................................................................................... 2

8 U.S.C. § 1101(a)(44)(A) .......................................................................... 20

8 U.S.C. § 1101(a)(44)(B) ..................................................................... 19, 20

8 U.S.C. § 1151(d)(1) ................................................................................... 3

8 U.S.C. § 1153(b)(1) ................................................................................... 3

8 U.S.C. § 1153(b)(1)-(3) ............................................................................ 3

8 U.S.C. § 1153(b)(1)(A)-(C) ...................................................................... 3

8 U.S.C. § 1153(b)(1)(C) .......................................................................... 1,4

8 U.S.C. § 1182(a)(5)(A)(i) .......................................................................... 3

8 U.S.C. § 1361 ...................................................................................................5, 18

## Federal Regulations

8 C.F.R. § 103.2(b)(8).........................................................................................5

8 C.F.R. § 103.2(b)(14).............................................................................5, 11, 22

8 C.F.R. § 103.5(a)(1)(i).....................................................................................22

8 C.F.R. § 103.5(a)(2).........................................................................................23

8 C.F.R. § 103.5(a)(3).........................................................................................23

8 C.F.R. § 103.5(a)(4).........................................................................................23

8 C.F.R. § 204.5(a),(c),(j)(1)................................................................................4

8 C.F.R. § 204.5(j)(3)(I)(C) ..................................................................................4

8 C.F.R. § 204.5(j)(2)...............................................................................4, 15, 21

8 C.F.R. § 204.5(j)(5) ...........................................................................................3

8 C.F.R. § 204.5(n)(2)...........................................................................................5

## Federal Rule of Civil Procedure

Fed. R. Civ. P. 56...................................................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This is an immigration case in which the United States Citizenship and Immigration Services ("USCIS") properly denied Plaintiff A & T Financial Services, Inc.'s I-140 Immigrant Petition for Alien Worker pursuant to 8 U.S.C. § 1153(b)(1)(C) because A & T failed to show that its beneficiary, Plaintiff Jian Feng Chen ("Chen"), would be employed in a managerial or executive capacity or that Chen's foreign employer had a qualifying relationship with A & T.  Because Plaintiffs cannot carry their burden of showing under the Administrative Procedure Act that the decisions of USCIS's Administrative Appeals Office were arbitrary and capricious, an abuse of discretion, or otherwise unlawful, Defendants are entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56.  *See* 5 U.S.C. §§ 551 et seq.

### STATEMENT OF THE ISSUE

Whether USCIS arbitrarily or capriciously denied A & T's I-140 Immigrant Petition for alien Worker pursuant to 8 U.S.C. § 1153(b)(1)(C) when A & T presented conflicting evidence about who owned A & T in various years and when A & T failed to fully respond to USCIS's Request for Evidence regarding Chen's prospective job duties at A & T.

1

## STANDARD OF REVIEW

Because the USCIS's Administrative Appeals Office ("AAO") issued the final decisions in this matter, this Court reviews the AAO decisions.  5 U.S.C. § 704; *Herrera v. USCIS*, 571 F.3d 881, 885 (9th Cir. 2009).

In an action for review pursuant to the Administrative Procedure Act, "the underlying agency decision . . . may not be set aside unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Brazil Quality Stones, Inc. v. Chertoff,* 531 F.3d 1063, 1067 (9th Cir. 2008) (quoting 5 U.S.C. § 706(2)(A)).  This standard of review is "highly deferential, presuming the agency action to be valid."  *Kern County Farm Bureau v. Allen,* 450 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Indep. Acceptance Co. v. California,* 204 F.3d 1247, 1251 (9th Cir. 2000)).  The standard requires the Court to "affirm[] the agency action if a reasonable basis exists for its decision."  *Kern County Farm Bureau,* 450 F.3d at 1076.  The Court cannot "substitute [its] own judgment for that of the agency."  *Nat'l Ass'n of Home Builders v. Norton,* 340 F.3d 835, 841 (9th Cir. 2003).  Instead, the Court may only reverse an agency action "when the agency has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product

1  of agency expertise.'" *Id.* (quoting *Pacific Coast Fed'n of Fishermen's Ass'ns v.*

2  *Nat'l Marine Fisheries Serv.,* 265 F.3d 1028, 1034 (9th Cir. 2001)).  In other

3  words, the Court may not "disturb the agency's findings under this deferential

4  standard 'unless the evidence presented would compel a reasonable finder of fact

5  to reach a contrary result.'" *Family, Inc. v. USCIS,* 469 F.3d 1313, 1315 (9th Cir.

6  2006) (quoting *Monjaraz-Munoz v. INS,* 327 F.3d 892, 895 (9th Cir. 2003)).

## STATUTORY AND REGULATORY FRAMEWORK

8           Congress allots only 140,000 visas each fiscal year to employment-based

9  immigrants.  *See* 8 U.S.C. § 1151(d)(1).  Of these, it reserves 28.6 percent for

10  employers that can demonstrate that their beneficiaries qualify in the first

11  preference ("EB-1") category.  8 U.S.C. § 1153(b)(1).  This category includes

12  "aliens with extraordinary ability," "outstanding professors and researchers" and

13  certain "multinational executives and managers."  8 U.S.C. § 1153(b)(1)(A)-(C).

14  Aliens in this first preference category can benefit from an employment-based visa

15  without their employers having to participate in the labor certification process

16  typically required of employers sponsoring immigrant visas.  8 U.S.C.

17  § 1153(b)(1)-(3); 8 U.S.C. § 1182(a)(5)(A)(i); 8 C.F.R. § 204.5(j)(5).  This means

18  that an international company seeking to transfer one its executives or managers

19  from abroad to a U.S. office may petition for a visa on the employee's behalf

20  without first demonstrating that the job cannot be filled by a U.S. worker.  *Id.*

3

To be eligible for an EB-1 visa as a multinational executive or manager, the petitioning U.S. employer must demonstrate that the alien beneficiary has worked for the employer in the employer's foreign office for at least one year in any of the three years prior to the alien's application and admission to the United States. 8 U.S.C. § 1153(b)(1)(C).  The U.S. company filing the petition must be either the same company as, or an affiliate or subsidiary of, the foreign employer.  *Id.*; 8 C.F.R. § 204.5(j)(3)(i)(C).  The petitioner must also prove that the beneficiary's job will *primarily* consist of executive or managerial duties.  8 U.S.C. § 1153(b)(1)(C); 8 C.F.R. § 204.5(j)(2).[1]

A U.S. employer seeking to classify an alien employee as a multinational executive or manager files the immigrant petition on Form I-140.  8 C.F.R. § 204.5(a), (c), (j)(1).  The burden of proof rests on the petitioner to establish by a preponderance of evidence that the petitioner and beneficiary meet each and every

_____

[1]  Non-immigrant "L-1A" visas are also available in a similar "intracompany transferee" category, and USCIS previously approved such an L-1A visa that A & T filed on behalf of Chen.  *See* Pl.'s Compl. at 3.  However, approval of a non-immigrant visa petition does not guarantee approval of a subsequent petition for an immigrant visa.  *See Matter of Church Scientology Int'l*, 19 I. & N. Dec. 593, 597 (BIA 1988) (stating that USCIS "is not required to approve applications or petitions where eligibility has not been demonstrated, merely because of prior approvals which may have been erroneous"); *see also Q Data Consulting, Inc. v. INS*, 293 F. Supp. 2d 25, 30 (D.D.C. 2003) (stating that in "some cases, L-1A classification[s] are simply approved in error, especially non-immigrant visa petitions that the INS spends less time deciding than I-140 petitions").

aspect of the statutory and regulatory definitions.  *See* 8 U.S.C. § 1361; *Matter of Chawathe*, 25 I. & N. Dec. 369, 374-76 (AAO 2010).

USCIS may request additional evidence from the petitioner to clarify whether the petitioner is eligible for the visa.  8 C.F.R. § 103.2(b)(8).  The failure to submit requested evidence that precludes a material line of inquiry shall be grounds for denying the petition.  8 C.F.R. § 103.2(b)(14).  "Doubt cast on any aspect of the petitioner's proof may, of course, lead to a reevaluation of the reliability and sufficiency of the remaining evidence offered in support of the visa petition."  *Matter of Ho*, 19 I. & N. Dec. 582, 591-92 (BIA 1988).

If USCIS denies the I-140 petition, the petitioner may appeal the decision to the AAO.  8 C.F.R. § 204.5(n)(2).  The AAO has *de novo* authority to hear appeals of denied immigrant visa petitions, and may address issues not raised during the initial adjudication.  *Cf. Janka v. Nat. Transp. Safety Bd.*, 925 F.2d 1147, 1149 (9th Cir. 1991); *see Soltane v. U.S. Dept. of Justice*, 381 F.3d 143, 145-46 (3d Cir. 2004).

## BACKGROUND OF ADMINISTRATIVE PROCEEDINGS

### A.    A & T's I-140 Petition

A & T Financial Services, Inc. is an "immigrant concierge company" established in 2009, purportedly to serve "wealthy Asian individuals" who "desire . . . to send their children to the United States for education and to immigrate

themselves into the American dream." AR 42.  The company claims to help new

Asian immigrants complete their daily errands and assimilate to American culture.

AR 49.

A & T filed its I-140 Immigrant Petition for Alien Worker on behalf of Chen

in May 2012.[2]  AR 204.  On its Form I-140, A & T stated that it already employed

two people and that it wished to hire its third employee, Chen, as a multinational

executive or manager.  AR 206, 208.  It stated that it would pay Chen $45,000 a

year.  AR 208.  A & T's petition included its own corporate documents stating that

as of July 12, 2011, four individuals owned A & T, with 500 shares owned by

JieFan Zhu, 500 shares by Sze-Man Wong, 4,500 shares by Nolan Chan, and 4,500

shares by Eunjin Chang.  AR 265-68.  Other A & T documents stated that on

February 20, 2012, A & T issued 80,000 new shares to Chen in exchange for

$800,000, and subsequently permitted Chen to transfer his stock to the Chinese

real estate development company Yuanbang Property Holdings Limited.  AR 263,

---

[2]  Although Chen is the beneficiary of A & T's petition, it is unclear whether Chen intends to immigrate to the United States or only seeks to provide immigrant status to his young adult children, whom A & T named as derivative beneficiaries.  AR 209.  The administrative record contains conflicting statements about whether Chen ever moved to the United States after USCIS approved his non-immigrant L-1A visa.  *See* Pl.'s Compl. at 3 (stating that Chen currently resides in the United States as a beneficiary of an L-1A petition filed by A & T); *but see* AR 52 (stating that Chen has not yet come to the United States and has not yet "come on board" with A & T).

1   271-74, 376.  Chen has served as Executive Chairman of Yuanbang since 2006.

2   AR 594.

3        No evidence of Yuanbang's ownership of A & T came from Yuanbang

4   itself, with the possible exception of a letter from Chen printed on Yuanbang

5   letterhead, which stated that Yuanbang had acquired a controlling interest of A &

6   T on an unspecified date.  AR 376, 377-592.  None of Yuanbang's corporate

7   documents, mission statements, annual reports, financial statements, or other

8   information gave any indication that Yuanbang might own A & T.  AR 377-592.

9        A & T also submitted copies of its 2009 and 2010 tax returns, which stated

10  that Nolan Chan and Eunjin Chang—and not JieFan Zhu or Sze-Man Wong—were

11  the only shareholders in those tax years.  AR 286-91, 314-17.  It also submitted a

12  company stock ledger.  AR 270.  However, the ledger failed to record any issuance

13  of stock for 2009 (when the company was incorporated) or for 2010.  *Id.*  It also

14  failed to record Chen's purported 2012 stock transfer to Yuanbang.  *Id.*

15  **B.    USCIS's Request for Additional Evidence**

16       On September 6, 2012, USCIS issued A & T a Request for Evidence, in

17  which it identified various defects with A & T's petition and instructed A & T to

18  submit evidence that could prove, among other things, that the company existed at

19  the location it provided and that it could pay Chen the proffered wage.  AR 90-91.

20

7

The Request for Evidence also stated that A & T had failed to demonstrate that it had a qualifying relationship with Chen's foreign employer, Yuanbang, or that Chen had worked abroad with a company that had a qualifying relationship with A & T.  AR 90-91.  It stated that although A & T claimed to be a subsidiary of Yuanbang, no such relationship existed in the agency's validation system.  AR 91.  It requested evidence of the requisite ownership and control between A & T and Yuanbang, which it stated could include annual reports, articles of incorporation, statements from the president or corporate secretary, financial statements, evidence of stock ownership, and stock ledgers.  *Id.*

The Request for Evidence also stated that A & T had failed to establish that it would employ Chen in a managerial or executive capacity, and it instructed A & T to submit:

> (a) a "very detailed description" of Mr. Chen's position(s) abroad, with an estimate of the percentage of time he dedicated to each specific duty;
>
> (b) a "very detailed description" of Chen's proposed duties in the United States with an estimate of the percentage of time he would dedicate to each specific duty;
>
> (c) a detailed organizational chart for A & T, illustrating the company structure, with Mr. Chen's proposed position and the names of all departments, teams, employees, and their titles and their job duties, with "sufficient detail to adequately illustrate [Chen's] former and prospective positions relative to others;" and

(d)  documentary evidence demonstrating the scope and nature of A & T's and Yuanbang's operations and the scope and nature of Chen's positions relative to those operations.  AR 91.

## C.   A & T Responds to the Request for Evidence and USCIS Denies A & T's Petition

A & T responded to USCIS's Request for Evidence by submitting documentation that included A & T's 2011 income tax return, listing Nolan Chan as A & T's sole owner in 2011.  AR 168-74.  A & T also submitted an organizational chart naming two A & T employees who would work under Chen, but failed to submit any details about their duties or about how Chen's position related to the scope and nature of A & T's operations.  AR 199.

Accordingly, USCIS denied A & T's petition on December 14, 2012.  AR 85-88.  Its denial stated that A & T's response to the Request for Evidence was untimely.  AR 87.  It also stated that A & T's petition was otherwise insufficient because it failed to establish a qualifying relationship with Yuanbang or otherwise establish that Chen had worked abroad with a company that had such a qualifying relationship.  *Id.*  USCIS also deemed A & T's petition insufficient because it failed to provide the requested detailed job description for Chen's positions abroad and in the United States and the requested organizational charts for Yuanbang and A & T.  *Id.*

**D.     The AAO Denies A & T's Administrative Appeal**

A & T administratively appealed USCIS's December 14, 2012, decision to the AAO, which dismissed the appeal on September 27, 2013.  AR 12-20.  The AAO determined that A & T's response to the Request for Evidence was timely, but that it was insufficient to demonstrate Chen's eligibility for an EB-1 visa.  AR 14, 16-18.

The AAO stated that A & T had presented insufficient and conflicting evidence of its ownership.  AR 17.  It noted that A & T's 2009 and 2010 tax forms indicated that A & T was owned exclusively by Nolan Chan and Eunjin Chang, and that its 2011 tax form identified Nolan Chan as the sole owner in 2011.  AR 17.  However, the AAO observed that A & T's stock ledger and meeting minutes stated that A & T was never jointly owned by Nolan Chan and Eunjin Chang and that it was never solely owned by Nolan Chan.  AR 17.  The AAO further noted that the ledger did not reflect the original issuance of stock in 2009 or any transfer of stock to Yuanbang.  AR 17.  Accordingly, the AAO determined that A & T failed to demonstrate that it had a qualifying relationship with Yuanbang.  AR 17.

The AAO also stated that A & T failed to establish that Chen would work in a managerial or executive capacity.  AR 17-20.  It observed that although USCIS's Request for Evidence had instructed A & T to submit a very detailed duty description for Chen's proposed position, including estimates of the percentages of

10

time he would spend on each task, A & T failed to provide it.  AR 18 (citing

8 C.F.R. § 103.2(b)(14) ("Failure to submit requested evidence that precludes a

material line of inquiry shall be grounds for denying the benefits request.").  The

AAO also stated that although A & T had submitted a job description for Chen

with its petition, it included both managerial and administrative or operational

tasks, and failed to quantify the time Chen would spend on each.  AR 19.  As a

result, the AAO stated that it could not determine whether Chen would primarily

perform the duties of a manager or executive.  AR 19 (citing *IKEA US, Inc. v. U.S.*

*Dept. of Justice*, 48 F. Supp. 2d 22, 24 (D.D.C. 1999)).

The AAO also observed that the duties listed on Chen's proposed job

description—such as "attending various business trips"— were otherwise too

vague to indicate whether they were primarily executive or managerial in nature.

AR 19.  It also observed that the organizational chart that A & T submitted in

response to the Request for Evidence failed to provide duty descriptions for the

two employees who would report to Chen, as requested by USCIS.  AR 19-20

(again citing 8 C.F.R. § 103.2(b)(14) ("Failure to submit requested evidence that

precludes a material line of inquiry shall be grounds for denying the benefits

request.").  Accordingly, the AAO determined that A & T also failed to establish

that it would employ Chen in a managerial or executive capacity, and it dismissed

the appeal.  AR 20.

11

**E.**     **A & T Moves the AAO to Reopen and Reconsider, and the AAO Denies the Motion**

On October 28, 2013, A & T moved for the AAO to reopen or reconsider its September 27, 2013, decision.  AR 7.  Along with its motion to reopen and reconsider, A & T submitted a letter stating that "[u]nfortunately . . . [its] prior attorney failed to submit the evidence that clearly shows how A & T Financial Services has a qualifying relationship with Yuanbang and how Mr. Chen qualifies as a multinational manager or executive."  AR 9.  The letter also stated that A & T had filed a complaint against the attorney with the State Bar of California.  AR 9.

A & T also submitted an updated position description for Chen, which included percentages of time that Chen's position would require him to spend on various duties, and a stock certificate stating that as of March 26, 2012, Yuanbang owned 80,000 shares of A & T.  AR 24, 65-66.  It also submitted an unsigned 2012 tax form indicating that Yuanbang owned 80% of A & T in 2012, that A & T earned $57,056 in gross revenue, and that it paid no salaries or wages that year.  AR 25, 30.

The AAO denied A & T's motion to reopen on December 9, 2013, for failure to meet the requirements of either a motion to reopen or motion to reconsider.  AR 3.  The AAO stated that it had already considered the stock certificate when it issued its previous decision and that the newly submitted 2012

12

1  tax form failed to address the discrepancies in the record regarding A & T's

2  ownership.[3]  AR 4-5.  Accordingly, the AAO determined that the evidence

3  submitted on motion was insufficient to reopen the matter with respect to a

4  qualifying relationship.  AR 5.

5      The AAO also determined that the updated job description was likewise

6  insufficient to reopen the matter with respect to whether Chen would work in a

7  managerial or executive capacity.  AR 5.  The AAO stated that USCIS had

8  previously put A & T on notice to provide estimates of the percentages of time

9  Chen would spend on every task and that A & T had failed to provide them.  AR 5.

10  It stated that it would not accept the evidence that had been available earlier in the

11  proceedings but was offered for the first time on appeal.  AR 5 (citing *Matter of*

12  *Soriano*, 19 I. & N. Dec. 764 (BIA 1988); *Matter of Obaigbena*, 19 I. & N. Dec.

13  533 (BIA 1988)).

14

15

16  ─────────────
    [3]  In fact, the AAO had not previously viewed the March 26, 2012, stock

17  certificate.  *See* AR 24, 158-62, 265-69.  However, the AAO had previously
    viewed the March 25, 2012, meeting minutes in which A & T authorized Chen to

18  transfer his 80,000 shares to Yuanbang.  AR 16, 271-72.  Like the meeting
    minutes, the March 2012 stock certificate fails to address the other discrepancies in

19  the record regarding A & T's ownership.  *See* AR 4-5, 24.  Also like the meeting
    minutes, the stock certificate directly conflicts with A & T's stock ledger, which

20  records no stock transfer between Chen and Yuanbang.  *Compare* AR 24 *with* AR
    157.

Accordingly, the AAO denied A & T's motion to reopen for failure to meet the heavy burden it bore to reopen its immigration proceedings.[4]  AR 6 (citing *INS v. Abudu*, 485 U.S. 94, 110 (1988)).  Finding that A & T also failed to allege any errors of law, the AAO also denied its motion for reconsideration.  AR 6.

## ARGUMENT

### A.    The AAO Properly Dismissed A & T's Appeal

To prevail on its contention that USCIS acted arbitrarily or capriciously in denying A & T's I-140 petition, A & T must demonstrate that the record compels two conclusions:  (1) that A & T is a subsidiary of Yuanbang and (2) that A & T will employ Chen in a managerial or executive capacity.  *See Family Inc. v. USCIS,* 469 F.3d 1313, 1315 (9th Cir. 2006) (explaining that the court "will not

---

[4]  In an abundance of caution, the AAO also denied A & T's motion to reopen on the ground that A & T's allegations against its prior counsel failed to meet the *Lozada* requirements for reopening based upon ineffective assistance of counsel. AR 3-4; *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988).  The AAO was correct that A & T's motion fell short of satisfying the *Lozada* requirements.  *See* AR 3-4; *Lozada* at 638-39.  However, even if A & T had met the *Lozada* requirements, the AAO would not have been required to reopen the petition on that ground.  *Lozada* applies only to motions to reopen removal proceedings before the Board of Immigration Appeals.  *Lozada* at 638 ("Any right a respondent in deportation proceedings may have to counsel is grounded in the fifth amendment guarantee of due process.").  It does not bind USCIS in the immigration benefit context, where visa petitioners have no Fifth Amendment right to counsel.  *Balam-Chuc v. Mukasey*, 547 F.3d 1044, 1051 (9th Cir. 2008) ("Although the failings of [the alien's] attorney in this case have resulted in terrible consequences for him and his family, the Fifth Amendment simply does not apply to the preparation and filing of a petition that does not relate to the fundamental fairness of an ongoing proceeding.").

14

disturb the agency's findings under this deferential standard unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result" (internal quotation marks omitted)); *see also BDCPS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003) ("When an agency offers multiple grounds for a decision, we will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable.")  Because A & T cannot demonstrate that the record compels either conclusion, the Court should uphold USCIS's decision to deny A & T's I-140 petition.

### 1.     The record does not compel a finding that A & T had a qualifying relationship with Yuanbang.

The administrative record amply demonstrates that A & T's inconsistent and incomplete evidence failed to establish that it is a subsidiary of Yuanbang.

To demonstrate that it was Yuanbang's subsidiary, A & T had to prove that Yuanbang owned a controlling interest in A & T.  8 C.F.R. § 204.5(j)(2). However, the evidence A & T submitted contained serious inconsistencies regarding A & T's ownership throughout the company's brief history.  The charts below summarize A & T's evidence of ownership:

**Evidence of A & T Ownership in 2009**

| A & T 2009 Income Tax Return (AR 314, 316) | *The entire duration of 2009:* Nolan Chan **-** 50%, Eunjin Chang **-** 50% |
|---|---|
| A & T Stock Ledger (AR 157) | No shareholders in 2009 |

**Evidence of A & T Ownership in 2010**

| A & T 2010 Income Tax Return (AR 286, 289) | *The entire duration of 2010:* Nolan Chan **-** 50%, Eunjin Chang - 50% |
|---|---|
| A & T Stock Ledger (AR 157) | No shareholders in 2010 |

**Evidence of A & T Ownership in 2011**

| A & T 2011 Income Tax Return (AR 172) | *The entire duration of 2011:* Nolan Chan **-** 100% |
|---|---|
| A & T Stock Ledger (AR 157) | *From July 12, 2011 - end of 2011:* Nolan Chan - 45% Eunjin Chang - 45% Sze Man Wong - 5% JieFan Zhu - 5% Chen - 0% |

16

**Evidence of A & T Ownership in 2012**

| | |
|---|---|
| February 15, 2012, Meeting Minutes and Notice of Transaction (AR 147-49, 153) | *February 15, 2012:* Nolan Chan - 5% Eunjin Chang - 5% Sze Man Wong - 0.56% JieFan Zhu - 0.56% Chen - 88.89% |
| May 12, 2012 Letter from Chen on Yuanbang Letterhead (AR 376) | Yuanbang - a "controlling interest of A & T" (does not provide a number of shares or a date when the shares were acquired) |
| February 20, 2012, Notice of Transaction (AR 156) | *February 20, 2012:* Chen - 80,000 shares This is the only piece of evidence claiming that Chen received his shares "on behalf of Yuanbang Property Holdings." |
| March 26, 2012, Meeting Minutes (AR 271-72) | *March 26, 2012:* Nolan Chan - 5% Eunjin Chang - 5% Sze Man Wong - 0.56% JieFan Zhu - 0.56% Yuanbang - 88.89% |
| A & T Stock Ledger (AR 157) | *February 15, 2012 -November 29, 2012 (when A & T responded to the Request for Evidence):* Nolan Chan - 5% Eunjin Chang - 5% Sze Man Wong - 0.56% JieFan Zhu - 0.56% Chen - 88.89% |

As the AAO observed, A & T's tax returns indicated that A & T was jointly

owned by Nolan Chan and Eunjin Chang throughout 2009 and 2010, and solely

owned by Nolan Chan throughout 2011.  AR 172; *see* I.R.S., 2009, 2010, and 2011

17

Instructions for Form 1120S, at 21(requiring S corporations to report the percentage of shares of every shareholder who owned stock at any time during the tax year on Schedule K-1).  However, as the AAO also observed, A & T's stock ledger stated that A & T was never jointly owned by Nolan Chan and Eunjin Chang and that it was never solely owned by Nolan Chan.  AR 17, 157.  As the AAO also observed, the stock ledger never identified an original issuance of stock in 2009 or any subsequent transfer of stock to Yuanbang.  AR 17.

"Doubt cast on any aspect of the petitioner's proof may, of course, lead to a reevaluation of the reliability and sufficiency of the remaining evidence offered in support of the visa petition."  *Matter of Ho*, 19 I. & N. Dec. 582, 591 (BIA 1988); *see also Love Korean Church v. Chertoff*, 549 F.3d 749, 754 (9th Cir. 2008) (deferring to the BIA's interpretation of 8 U.S.C. § 1361 in *Matter of Ho*).  A & T needed to provide competent objective evidence to resolve the inconsistencies in the record regarding its ownership.  *Love Korean Church v. Chertoff*, 549 F.3d at 754; *Matter of Ho*, 19 I. & N. Dec. at 591 ("[I]t is incumbent upon the petitioner to resolve the inconsistencies by independent objective evidence.")  However, nothing in the Yuanbang corporate profile, chairman's statement, financial reports, business and financial review, auditor's reports, annual report, corporate presentation, or other corporate documents showed or even suggested that Yuanbang owned A & T.  AR 377-588.  The only piece of evidence supporting

18

that claim that A & T even claimed to be produced by Yuanbang was a letter

signed by Chen on Yuanbang letterhead.  AR 376, 377-592.  Such a letter from the

beneficiary himself cannot constitute independent, objective evidence sufficient to

overcome the other serious inconsistencies in the record.  *See, e.g.*, *Global*

*Fabricators, Inc. v. Holder*, 320 F. App'x 576, 580 (9th Cir. 2009) (unpublished)

(upholding an AAO decision that determined, among other things, that averments

made by petitioner's own human resources department and safety manager did not

constitute objective evidence).

Accordingly, the AAO did not act arbitrarily or capriciously, or abuse its

discretion, by dismissing A & T's appeal for failure to prove that it was a

subsidiary of Yuanbang.

### 2.    The record does not compel a finding that A & T will employ Chen in a managerial or executive capacity.

The AAO properly found that A & T failed to establish that it will employ

Chen in an executive or managerial capacity because its job descriptions were too

vague to explain Chen's actual day-to-day duties and because A & T failed to

submit the more detailed documentation that USCIS described in its Request for

Evidence.

The Immigration and Nationality Act defines "executive capacity" as "an

assignment within an organization in which the employee *primarily*:  (i) directs the

19

1  management of the organization . . . ; (ii) establishes [its] goals and policies . . . ;

2  (iii) exercises wide latitude in discretionary decision-making; and (iv) receives

3  only general supervision or direction from higher level executives . . . ."  8 U.S.C.

4  § 1101(a)(44)(B) (emphasis added).  The Act defines "managerial capacity" as "an

5  assignment within an organization in which the employee *primarily*:  (i) manages

6  the organization . . . ; (ii) supervises and controls the work of other supervisory . . .

7  employees . . . ; (iii) . . .  has the authority to hire and fire . . . ; and (iv) exercises

8  direction over the day-to-day operations . . . ."  8 U.S.C. § 1101(a)(44)(A)

9  (emphasis added).

10       An alien cannot qualify as a manager or executive "simply because he

11  performs managerial tasks."  *Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063,

12  1070 (9th Cir. 2008).  Rather, "such tasks must encompass his *primary*

13  responsibilities.  *Id.*; 8 U.S.C. § 1101(a)(44)(A)-(B).  Consequently, A & T bore

14  the burden of not only demonstrating that Chen would engage in executive or

15  managerial duties, but of demonstrating what proportion of his responsibilities

16  would be executive or managerial tasks.  *Brazil Quality Stones*, 531 F.3d at 1070

17  (citing *Republic of Transkei v. INS*, 923 F.2d 175, 177-78 (D.C. Cir. 1991)).

18       A & T failed to meet that burden for two reasons.  First, as the AAO

19  properly determined, the job descriptions A & T submitted for Chen were too

20  vague to establish whether he would work in a managerial or executive capacity.

*See* AR 18-19, 348.  As the AAO stated, "The duties offered by [A & T], such as developing business in furtherance of its objective, balancing, forecasting and amending budget, attending various business trips, casting visions and future direction, and providing leadership, are vague and provide little probative value as to the beneficiary's actual day-to-day activities."  AR 19.  Such vague duty descriptions failed to inform the AAO about the extent to which Chen's duties would involve actual management, discretionary decision-making, the supervision of other supervisory employees, or any of the other executive and managerial functions identified in the regulations.  *See* 8 C.F.R. § 204.5(j)(2); *see, e.g.*, *Tsiva, Inc. v. Attorney Gen.*, No. 3:12-CV-631-J-34PDB, 2014 WL 6675607, at *8 (M.D. Fla. Nov. 24, 2014) (unpublished) (upholding the AAO's determination that "direct[ing], manag[ing], and train[ing] the first line managers/supervisors" was an overly vague job description because it did not explain or specify what tasks the beneficiary would undertake to accomplish those duties); *Kong Hong USA Inc. v. Chertoff*, No. C-06-00804EDL, 2006 WL 3068876, at *3 (N.D. Cal. Oct. 27, 2006) (unpublished) (upholding an AAO determination that "formulat[ing] strategic plans and goals" was an overly vague job description when the petitioner failed to define the company's actual goals and objectives and failed to clarify exactly how the beneficiary performed those duties).

Second, as the AAO also properly determined, A & T failed to submit the more detailed documentation that USCIS described in its Request for Evidence. *See* AR 19-20, 92-199.  USCIS's Request for Evidence instructed A & T to submit, among other things, a very detailed description of Chen's duties (with an estimate of the percentage of time he would dedicate to each duty), and a detailed organizational chart that included the other A & T employees' job duties.  AR 91. A & T failed to submit those items in its response to the Request for Evidence.  *See* AR 92-199.

As the AAO correctly stated, the "[f]ailure to submit requested evidence that precludes a material line of inquiry shall be grounds for denying the benefits request."  8 C.F.R. § 103.2(b)(14).  Accordingly, the AAO did not act arbitrarily or capriciously, or abuse its discretion, by dismissing A & T's appeal for failure to establish that Chen would work in an executive or managerial capacity.

**B.    The AAO Properly Denied A & T's Motion to Reopen or Reconsider**

The AAO did not act arbitrarily or capriciously, or abuse its discretion, by denying A & T's motion to reopen or reconsider.

USCIS "*may*, for proper cause shown, reopen the proceeding or reconsider the prior decision."  8 C.F.R. 103.5(a)(1)(i) (emphasis added).

"A motion to reconsider must state the reasons for reconsideration and be supported by any pertinent precedent decisions to establish that the decision was

22

1    based on an incorrect application of law or Service policy." 8 C.F.R.

2    § 103.5(a)(3). As the AAO observed, A & T failed to allege any errors of law

3    whatsoever in its motion to reopen or reconsider. AR 6, 7-11. Therefore, the AAO

4    properly denied A & T's motion to reconsider. 8 C.F.R. § 103.5(a)(4) (requiring

5    any motion that does not meet all applicable regulatory requirements to be

6    dismissed).

7         "A motion to reopen must state the new facts to be provided in the reopened

8    proceeding and be supported by affidavits or other documentary evidence."

9    8 C.F.R. § 103.5(a)(2). Further, the new facts must possess such significance that,

10   "if proceedings . . . were reopened, with all the attendant delays, the new evidence

11   offered would likely change the result in the case." *Matter of Coelho*, 20 I. & N.

12   Dec. 464, 473 (BIA 1992); *see also Young Sun Shin v. Mukasey*, 547 F.3d 1019,

13   1025 (9th Cir. 2008).

14        On motion, A & T submitted new evidence to demonstrate that it was a

15   subsidiary of Yuanbang, including an unsigned 2012 tax return, indicating that

16   Yuanbang owned 80% of A & T, Nolan Chan owned 14.5%, Eunjin Chang owned

17   4.5%, Sze-Man Wong owned .5% and JieFan Zhu owned .5%. AR 30, 32, 34, 36,

18   38. It also submitted a March 2012 stock certificate stating that Yuanbang

19   received 80,000 shares of A & T. AR 24.

20

23

1    The AAO correctly determined that the unsigned 2012 tax return did not

2    address the discrepancies in the record regarding A & T's ownership from 2009-

3    2011.[5]  *See supra* pp. 16-18 (summarizing the inconsistencies in A & T's evidence

4    of ownership from 2009-2011); AR 4-5 (citing *Matter of Ho*, 19 I. & N. Dec. at

5    591) ("Doubt cast on any aspect of the petitioner's proof may, of course, lead to a

6    reevaluation of the reliability and sufficiency of the remaining evidence offered in

7    support of the visa petition" and "it is incumbent upon the petitioner to resolve the

8    inconsistencies by independent objective evidence.").

9    As the AAO also noted, the March 2012 stock certificate that A & T

10   submitted on motion also fails to bolster A & T's claims.  AR 4-5.  The AAO

11   mistakenly thought it had viewed the stock certificate already, and rejected it as

12   evidence that it had already considered.  AR 4.  This mistake was harmless,

13   however, because had the AAO realized it had not viewed the certificate before, it

14   would have rejected it as evidence previously available that should have been

15   submitted in response to the Request for Evidence.  *City of Sausalito v. O'Neill,*

16   _____

     [5]  Rather than resolve inconsistencies in A & T's claim, the 2012 tax return

17   actually created new discrepancies in the record.  For example, the tax return

     reported that Yuanbang owned 80% of A & T in 2012, rather than a prorated share

18   of the 88.89% ownership alleged in the March 2012 meeting minutes.  AR 30, 271-
     72; *see* I.R.S., 2012 Instructions for Form 1120S, at 22 (instructing filers to prorate

19   ownership shares acquired during the tax year).  In addition, the 2012 tax returns
     stated that A & T paid no wages or salaries in 2012.  AR 25.  However, A & T

20   reported $15,000 and $24,000 in 2012 quarterly wages to the California
     Employment Development Department.  AR 164-66.

                                              24

386 F.3d 1186, 1220 (9th Cir. 2004) ("In reviewing agency action, the [Administrative Procedure Act] requires that 'due account shall be taken of the rule of prejudicial error.'" (quoting 5 U.S.C. § 706)); AR 5 ("Where, as here, a petitioner has been put on notice of a deficiency in the evidence and has been given an opportunity to respond to that deficiency, the AAO will not accept evidence offered for the first time on motion.") (citing *Matter of Soriano*, 19 I. & N. Dec. 764 (BIA 1988); *Matter of Obaigbena*, 19 I. & N. Dec. 533 (BIA 1988)).  In addition, the stock certificate, like the 2012 tax return, fails to resolve the serious inconsistencies in the record regarding A & T's ownership.  *See* AR 24, 30, 147-49, 153, 156-57, 172, 271-72, 285, 289, 314, 316.

As such, the AAO did not act arbitrarily or capriciously, or abuse its discretion, by determining that the evidence A & T submitted on motion was insufficient to reopen A & T's petition.

## CONCLUSION

For the foregoing reasons, the Court should find that USCIS did not abuse its discretion or act arbitrarily, capriciously, or otherwise contrary to law when it denied A & T's I-140 petition and subsequent motion to reopen and reconsider. Therefore the Court should grant summary judgment to the Defendants.

Dated:  December 19, 2014                    Respectfully submitted,

                                             JOYCE R. BRANDA
                                             Acting Assistant Attorney General
                                             Civil Division

                                             WILLIAM C. PEACHEY
                                             Director
                                             Office of Immigration Litigation
                                             District Court Section

                                             KATHERINE E.M. GOETTEL
                                             Senior Litigation Counsel
                                             Office of Immigration Litigation
                                             District Court Section

                                             */s/ Genevieve Kelly*
                                             GENEVIEVE KELLY
                                             Trial Attorney
                                             Office of Immigration Litigation
                                             Civil Division
                                             U.S. Department of Justice
                                             P.O. Box 868, Ben Franklin Station
                                             Washington, DC 20004
                                             (202)532-4705
                                             (202)305-7000 (facsimile)
                                             genevieve.m.kelly@usdoj.gov

                                             Attorneys for Defendants

26

# <u>CERTIFICATE OF SERVICE</u>

8:14-cv-00780-JLS-RNB

I hereby certify that on December 19, 2014, I electronically transmitted the aforementioned NOTICE OF MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Andrew M Knapp
Claire Cifuentes Law Offices
1301 West 2nd Street Suite 100
Los Angeles, CA 90026
213-250-0185;

Russell Abrutyn
Marshal E. Hyman & Associates
3250 W. Big Beaver, Suite 529
Troy, MI 48084
248- 643-0642.

*/s/ Genevieve Kelly*
GENEVIEVE KELLY
Attorney for Defendant
District Court Section
Office of Immigration Litigation
U.S. Department of Justice